# EXHIBIT "A"

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **Jason Cano**, | |
| Plaintiff, | Case No. 3:20-cv-03501-G |
| v. | |
| **Assured Auto Group and SunPath, Ltd.** | Complaint and Demand for Jury Trial |
| Defendant. | |

## SECOND AMENDED COMPLAINT

**Jason Cano** (Plaintiff), by and through his attorneys, **Kimmel & Silverman, P.C.**, alleges the following against **Assured Auto Group and SunPath, Ltd.,** (Defendants):

## INTRODUCTION

1. Plaintiff's Complaint is based on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 and §302.101 of the Texas Business and Commercial Code.

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See <u>Mims v. Arrow Fin. Servs., LLC</u>, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

3. This Court has personal jurisdiction over Defendants conduct business in the State of Texas.

4. Venue is proper under 28 U.S.C. § 1391(b)(2).

1

## PARTIES

5. Plaintiff is a natural person residing in Irving, Texas 75062.

6. Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).

7. Defendant Assured Auto Group ("AAG") is a business entity with a principal place of business and mailing address of 1665 Palm Beach Lakes Blvd., #200, West Palm Beach, Florida, 33401.

8. Defendant SunPath, Ltd. ("SunPath") is a business entity with principal place of business and mailing address at 50 Braintree Hill Office Park, Suite 310, Braintree, Massachusetts, 02184.

9. Defendants are "persons" as that term is defined by 47 U.S.C. § 153(39).

10. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## FACTUAL ALLEGATIONS

Relationship Between AAG and SunPath

11. SunPath provides extended warranty services to consumers.

12. To generate business through sales, SunPath relies on telemarketing services conducted by third parties.

13. Specifically, SunPath entered into a "Call Center Marketing Agreement" ("CCMA") with AAG. A true and correct copy of that agreement will be filed under seal in the forthcoming Exhibit "A."[1]

---

[1] The subject agreement has been designated by Defendants as confidential. While Plaintiff disputes that the agreement is in fact confidential, because the confidentiality of the document has not been agreed upon by the Parties or adjudicated by the Court, Plaintiff is agreeable to filing under seal at this juncture.

14. The preamble of the CCMA provides that "[SunPath] desires to have [AAG] market the products [i.e. extended warranties and service contracts] to customers for which [AAG] will be compensated as set forth below." (Ex. A., p. 1.)

15. In other words, AAG will be compensated for selling warranties/service contracts on behalf of SunPath.

16. The CCMA provides that "[AAG] shall provide continued maintenance and servicing of Customers In accordance with [SunPath]'s policies and procedures" (Ex. A.,p. 1 ¶ 7.)

17. The foregoing makes it clear that AAG has been assigned a duty to carry SunPath's policies on SunPath's behalf.

18. The CCMA also provides that AAG is to be compensated based on the volume and value of sales of SunPath warranties/service contracts. (Ex. A, p. 2, ¶¶ 13-15.)

19. The CCMA contains a lengthy list of "standards of conduct" by which AAG was obligated to comply in its sales of SunPath products and specifically its telephone solicitation. (Ex. A, pp. 3-7.)

20. If AAG failed to comply with SunPath's policies, SunPath's corporate representative testified that SunPath would terminate the Agreement.

21. In short, it is apparent that SunPath exercised significant control over AAG, that SunPath derived profit from AAG's sales efforts.

Direct and Vicarious Liability

22. To the extent Defendant SunPath outsourced its illegal robocalling to AAG, SunPath is still liable for calls that violate the TCPA.

23. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (internal citations omitted).

24. Moreover, the May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. at 6587 n. 107.

25. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. at 6593.

26. Defendant SunPath hired, permitted, and enjoyed the benefits of AAG's mass robocalling.

27. Defendant SunPath acted as a principal to AAG, who acted as its agent.

28. Defendant SunPath is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from AAG's unlawful calls.

4

29. For the counts identified below, Defendant AAG is directly liable as the party that directly caused the unlawful calls to be placed.

30. For the counts identified below, Defendant SunPath is vicariously liable for the unlawful calls, as it contracted with AAG, benefitted from AAG's unlawful calls and directed AAG's violative conduct.

<u>Defendants' Campaign of Telephone Solicitation Calls to Plaintiff</u>

31. At all times relevant hereto, Plaintiff maintained a cellular telephone, the number for which was 214-XXX-3587.

32. At all times relevant hereto, Plaintiff used the aforementioned cell phone for residential purposes.

33. On or around October 7, 2017, Plaintiff registered his cell phone number on the federal Do Not Call Registry.

34. Plaintiff registered his number on the Do Not Call registry in order to obtain solitude from invasive and unwanted solicitation calls.

35. The "214" area code is associated with the Greater Dallas area in Northern Texas, where Plaintiff resided at all relevant times.

36. AAG placed calls to Plaintiff's 214 area-code cell phone at the direction and for the benefit of SunPath in order to sell Plaintiff SunPath service contract/warranty.

37. One of SunPath's strategies for telemarking involves the use of an automatic telephone dialing system ("ATDS") to solicit business by third parties.

38. Beginning in or around January 2020, AAG began calling Mr. Cano on his cell phone attempting to sell Plaintiff a SunPath extended warranty.

39.     Plaintiff never sought information about a motor vehicle warranty and did not consent to the calls from AAG.

40.     These calls were not made for "emergency purposes," but rather for telemarketing purposes.

41.     Upon information and belief, Defendant utilize a "predictive dialing system" which interfaces with software and databases which have the capacity to generate numbers randomly or sequentially.

42.     The dialing system used by Defendant call phone numbers stored in those databases.

43.     Accordingly, Defendants' dialing systems have the capacity to dial numbers using a random or sequential number generator.

44.     Furthermore, Defendants' dialing systems use computer code and/or algorithms to determine the orders/sequence of calls to be automatically dialed.

45.     The operation of the random/sequential number generator, referred to above results in Defendants' dialing system automatically placing calls to the 10 digit telephone numbers in Defendants' stored list(s).

46.     Plaintiff believes and avers that Defendants called him with an automatic telephone dialing system.

47.     Plaintiff believes this because Defendants' calls to Plaintiff began with a noticeable pause or delay prior to a live representative of Defendants appearing on the line.

48.     In total, Defendants called Plaintiff on times including but not limited to:

- 02/17/2020 at 10:06 am CST;

- 02/17/2020 at 2:02 pm CST;

- 02/17/2020 at 6:21 pm CST;
- 02/19/2020 at 1:28 pm CST;
- 02/20/2020 at 9:51 am CST;
- 04/17/2020 at 8:51 am CST; and
- 05/06/2020 at 1:25 pm CST.

49. Upon information and belief, Defendants called Plaintiff on numerous additional instances where Plaintiff did not keep record of the calls.

50. In total, Plaintiff believes and therefore avers that Defendants called Plaintiff on at least 15 instances.

51. On each occasion listed above, Mr. Cano answered the call and heard either a lengthy pause or delay before anyone came on the line, indicating to Mr. Cano that the call was made using an ATDS.

52. When Plaintiff spoke with a live individual, Defendants' representatives attempted to sell him a SunPath warranty.

53. On February 24, 2020, in order to ascertain who was responsible for the calls, Mr. Cano provided AAG with his credit card number to facilitate a down payment on a SunPath automobile warranty.

54. Immediately after providing the credit card number, Defendant AAG charged Mr. Cano's credit card in the amount of $145.00.

55. On April 24, 2020, Defendants sent correspondence to Mr. Cano with a contract booklet containing information about the SunPath warranty he purchased on this same date. See Exhibit "B."

56. In sending the SunPath warranty to Plaintiff's Texas residence, Defendants knowingly and purposefully availed themselves to Texas.

57. The contract booklet attached to the email included a welcome letter, information about the warranty, and a payment plan agreement. See Exhibit "B."

58. The contract booklet from AAG identified itself as the "Seller/Dealer/Vendor," the and the "Administrator" as SunPath. See Id.

59. Defendants are not registered as a telephone solicitor with the Texas Secretary of State as required by the Texas Business and Commerce Code.

60. This was confirmed by checking if Defendant was registered at: https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp.

61. The actions described herein were in violation of the TCPA and Texas Business and Commercial Code.

## COUN T I
## DEFENDANTS VIOLATED THE TCPA 47 U.S.C. § 227(b)

62. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

63. The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

64. Defendants initiated multiple telephone calls to Plaintiff's cellular telephone number using an automatic telephone dialing system.

65. Specifically, Defendants used a dialing system which dials or stores numbers using a random or sequential number generator.

66. Defendants' calls were not made for "emergency purposes."

67. Defendants' calls to Plaintiff's cellular telephone without any prior express consent.

68. Defendants contacted Plaintiff despite the fact that Plaintiff has been on the Do Not Call Registry since October 7, 2017.

69. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

70. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

71. As a result of the above violations of the TCPA and Texas Business & Commerce Code, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

## COUNT II
## DEFENDANT VIOLATED THE TCPA 47 U.S.C. § 227(c)

72. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

73. The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered his or his telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

74. Defendants contacted Plaintiff despite the fact that Plaintiff's cell phone number has been on the Do Not Call Registry since October 7, 2017.

75. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

76. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

77. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

## COUNT III
## DEFENDANT VIOLATED § 302.101 OF
## THE TEXAS BUSINESS AND COMMERICAL CODE

78. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

79. §302.101 of the Texas Business & Commerce Code prohibits sellers from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

80. Defendants violated § 302.101 of the Texas Business & Commercial Code when its representatives engaged in continuous and repetitive telephone solicitation of Plaintiff without obtaining a registration certificate from the Office of the Secretary of State.

81. §302.302(a) of the Texas Business & Commerce Code provides that a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation. Furthermore, §302.302(d) provides that the party bringing the action is also entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney fees.

**Wherefore**, Plaintiff, **Jason Cano,** respectfully prays for judgment as follows:

a. All actual damages Plaintiff suffered (as provided under 47 U.S.C. § 227(b)(3)(A)) and 15 U.S.C.A. § 6104(a) for damages under 16 C.F.R. § 310.4(b)(1)(iii)(B) ;

b. Statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3)(B));

c. Additional statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(C);

d. Treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3));

e. Additional treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(C);

f. Statutory damages of $5,000 per violation (as provided under §302.302(a) of the Texas Business & Commerce Code);

g. All reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff pursuant to §302.302(a) of the Texas Business & Commerce Code;

      h.      Injunctive relief (as provided under 47 U.S.C. § 227(b)(3) and (c); and

      i.      Any other relief this Honorable Court deems appropriate.

## DEMAND FOR JURY TRIAL

**Please take notice** that Plaintiff, **Jason Cano,** demands a jury trial in this case.

                                                                        Respectfully submitted,

Dated: September 9, 2021                By: *s/ Jacob U. Ginsburg*
                                                                 Jacob U. Ginsburg, Esq.
                                                                 Kimmel & Silverman, P.C.
                                                                 30 East Butler Pike
                                                                 Ambler, PA 19002
                                                                 Phone: 215-540-8888
                                                                 Facsimile: 877-788-2864
                                                                 Email: jginsburg@creditlaw.com

### CERTIFICATE OF SERVICE

I, Jacob U. Ginsburg, Esq. hereby certify that on September 9, 2021, a true and correct copy of the foregoing has been served on all parties of record via ECF.

                                                                          */s/ Jacob U. Ginsburg*