**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **JERRY BALDRIDGE,** | § § § | |
| Plaintiff, | § § | **Civil Action No.: 4:21-cv-3629** |
| **v.** | § § | |
| **SUNPATH, LTD.,** | § § § | |
| Defendant. | § § § § | |

## <u>ORDER</u>

AND NOW, upon review of Defendant SunPath LTD's Motion to Dismiss and Plaintiff, Jerry Baldridge's response in opposition thereto, it is hereby ORDERED that the Defendant's Motion to Dismiss is DENIED.  Defendant shall file an answer to the Plaintiff's Complaint within fourteen (14) days of this Order.

SO ORDERED this _____ date of _____, 2022.


BY THE COURT:


_____
UNITED STATES DISTRICT JUDGE
.

## I.      INTRODUCTION

The extended warranty industry has become notorious in the United States for the persistent, invasive and disruptive telemarketing calls to consumers who never consented or

asked to receive such calls. (Federal Trade Commission: "Hang up on auto warranty robocalls.")   https://www.consumer.ftc.gov/blog/2021/05/hang-auto-warranty-robocalls   (May 19, 2021)).  Despite the increase in claims asserted by fed-up consumers under the Telephone Consumer Protection Act, and the expansion of similar state statutes,[1] the number of robocalls from extended warranty sellers and other telemarketers has continued to rise.[2]

Why do the frequent robocalls from car warranty companies continue despite federal and state statutes designed to dissuade such harassing communications?  SunPath's motion to dismiss is illustrative to this inquiry.  Extended warranty companies such as SunPath hire elusive and often anonymous telemarketers to place the robocalls for the warranty companies.  While 99 out of 100 consumers may just deal with the annoyance and go about their lives, when 1 in 100 files suit under the TCPA against the warranty seller (often the only party the consumer could know), the warranty seller will say "but we didn't place the calls".

Here, SunPath's "call center marketing agreement" ("CCMA") it has with telemarketers is known to Plaintiff Jerry Baldridge.  The CCMA provides strict procedures which SunPath's telemarketers/agents must follow and demonstrates extensive control over the who sell SunPath warranties to consumers.  SunPath's efforts to evade culpability for its invasive and harassing methods of making money based on its decision to outsource the calls to third-parties must not carry the day.  For the reasons stated below, SunPath's motion to dismiss must be denied.

## II.    STATEMENT OF RELEVANT FACTS

---

[1] *See e.g.* Florida Telemarketing Act, Fla. Stat § 501.616 et seq.; See Virginia Telephone Privacy Protection Act, Virginia Code § 59.1-514 et seq.

[2] See Federal Trade Commissions: FTC Issues Biennial Report to Congress on the National Do Not Call Registry (Jan. 5, 2022), available at: https://www.ftc.gov/news-events/press-releases/2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.)

### A. **SunPath and its Connections to Texas**

Defendant SunPath is a motor vehicle warranty company based in Massachusetts. (Compl., ¶¶ 12, 15, 17.)  Defendant SunPath is registered to do business and regularly conducts business in the State of Texas. (Compl., ¶ 4.)  SunPath causes outbound telephone calls to be made using Texas area codes, including area code "254". (Compl., ¶ 6, 40.)  SunPath solicited business from Plaintiff, a Texas Resident. (Compl., ¶ 7.)

Defendant obtains a significant portion of its customers through the use of telemarketing. (Comp. ¶¶ 16, 18.)  One of Defendant's strategies for telemarketing involves the hiring of call centers to place calls on its behalf using automatic telephone dialing system and automated/pre-recorded voice. (Comp. ¶ 19.)  Defendant contracts with telemarketing vendors through agreements referred to as "Call Center Marketing Agreements."[3] (Comp. ¶ 21.)  In these Agreements, SunPath's vendors are required to act as fiduciaries toward SunPath. (Compl., ¶22.)  SunPath exercises a substantial amount of control over its vendors, where it limits the names the vendors can use for their businesses, limits the phrases the vendors can use when selling SunPath warranties, dictates the tone of voice in which SunPath's vendors can speak when selling SunPath Warranties and requires vendors to meet certain staffing requirements when selling SunPath warranties. (Compl., ¶ 23.)  SunPath's vendors receive compensation based on the quantity of SunPath warranties sold. (Compl., ¶ 24.)  SunPath acts as a principal, and its call center vendors act as its agents. (Compl., ¶ 25.)

### B. **SunPath's Unlawful Telephone Harassment of Jerry Baldridge**

Plaintiff, Jerry Baldridge is a natural person residing in Montgomery, Texas. (Compl., ¶ 10.)  On or around January 2, 2006, in order to obtain solitude and reprieve from intrusive and

---

[3] Plaintiff has obtained these Call Center Marketing Agreements through other matters with Defendant and can file said documents under seal upon request.

harassing telemarketing and solicitation calls, Mr. Baldridge registered his cell phone 254-XXX-0022 on the FTC's Do Not Call Registry. (Compl., ¶¶ 30-31.)   At all times relevant hereto, Plaintff used that cell phone for residential purposes. (Compl., ¶ 32.)   One at least 8 occasions in or around the Fall of 2019, Defendant and/or its agents called Plaintiff on his cellphone seeking to sell him a motor vehicle warranty. (Compl., 38.)  Plaintiff did not consent to these calls, was not interested in a motor vehicle warranty, and had not sought information regarding a warranty. (Compl., ¶ 35.)

Defendant's calls included a pre-recorded message advising Plaintiff that his vehicles warranty had expired. (Compl., ¶ 34.)  Plaintiff, in an effort to ascertain the identity of the party intruding his solitude and disregarding his number's registration on the Do Not Call Registry, engaged with the telephone call and spoke with a live agent. (Compl., ¶ 41.)  Plaintiff inquired as to the company the agent was calling from. (Compl., ¶ 42.) The agent identified Defendant as the party responsible and provided a website for Plaintiff to conduct his own research about the company, GoSunPath.com (Compl., ¶ 43.)  Plaintiff visited the aforementioned website and was able to confirm that the calls were placed by or on behalf of, SunPath, Ltd. (Compl., ¶ 44.)

As a result of the foregoing, Plaintiff has filed suit against Defendant for violating §§ 227(b) and 227(c) of the Telephone Consumer Protection Act, 47 U.S.C. § 47 U.S.C. § 227, *et seq.* ("TCPA") and § 302.101 of the Texas Business and Commerce Code.

## III.   ARGUMENT

### A.   Standard for Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows a party to seek dismissal of a complaint or any portion of a complaint for lack of personal jurisdiction over the defendant.  In ruling on a Rule 12(b)(2) motion, "uncontroverted allegations in the plaintiff's complaint must be taken as

true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." Engel v. Hilton Worldwide, 2020 U.S. Dist. LEXIS 165407, 2020 WL 5441568 (5th. Cir.)  In Clemens v. McNamee, 615 F. 3d 374, 378 (5th Cir. 2010); the Court held that "Plaintiffs need only establish a prima facie case for personal jurisdiction and proof by a preponderance of the evidence is not require."  To decide whether a prima case exists, "the Court must accept as true Plaintiff's uncontroverted allegations…and resolve in its favor all conflict between the facts contained in the parties' affidavits and other documentation." Clemens, 615 F.3d at 378.

### B.  This Court Has Specific Personal Jurisdiction Over SunPath.

#### 1.  SunPath's Placement of Telemarketing Calls to Texas Gives Rise to Personal Jurisdiction Over SunPath.

For a court to exercise specific jurisdiction, the lawsuit must arise out of or relate to the defendant's contacts with the forum. Id.  Said another way, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Matthews v. United Healthcare Servs., Civil Action No. 3:19-CV-01212-E, 2020 U.S. Dist. LEXIS 164082, at *7 (N.D. Tex. Sep. 9, 2020).

Where the plaintiff alleges specific jurisdiction, the Fifth Circuit applies a three-step analysis: (1) "minimum contacts by the defendant purposefully directed at the forum state"; (2) "nexus between the defendant's contacts and the plaintiff's claims"; and (3) "that the exercise of jurisdiction over the defendant be fair and reasonable." ITL Int'l, Inc. v. Constenla, S.A., 669 F.3d 493, 498 (5th Cir. 2012).  Specific jurisdiction is appropriate only where the defendant "purposefully availed itself to the privilege of conducting activities in-state, thereby invoking

the beenfits and protections of the forum state's laws," though it "may arise incident to the commission of a single act directed at the forum." Herman v. Cataphora, Inc., 730 F.3d 460, 464 (5th. Cir. 2013)(citations omitted); *see*, e.g. Bates Energy Oil & Gas v. Complete Oilfield Servs., 361 F. Supp. 3d 633, 648 (W.D. Tex. 2019) (noting the long-standing Fifth Circuit principles that committing a tort in whole or in part in Texas will give rise to specific jurisdiction here).

In Montelongo v. My Fin Sols. LLC, 2020 U.S. Dist. LEXIS 5755, 2020 WL 2100814 (W.D. Tex. 2020) the Western District of Texas found, a Defendant in a TCPA matter purposefully availed itself to Texas by calling a Texas area code, and that such activity created a Texas interest in adjudicating the matter:

> Accepting Montelongo's allegations as true, that she received three phone calls from Caposio's direct line after she requested no further calls, **Caposio has accepted the benefits of doing business in Texas and is subject to this TCPA action in this forum because the litigation relates to Caposio's conduct in this forum.** When the record demonstrates that a defendant has sufficient minimum contacts with a forum, a court must deny a Rule 12(b)(2) motion to dismiss unless the defendant makes "a compelling case that the presence of some other consideration would render jurisdiction unreasonable.. Caposio's argument is not compelling.

Montelongo, at 7 (emphasis added)(internal citations omitted).

In Thomas v. Life Protect 24/7 Inc., No. 4:20-cv-03612, 2021 U.S. Dist. LEXIS 171881 (S.D. Tex. Sep. 10, 2021), Judge Eskridge rejected an argument similar to that advanced by SunPath that the act of placing phone calls to the State of Texas is insufficient contacts to give rise to personal jurisdiction:

> Here, Life Protect (allegedly) engaged in the very business practice specifically condemned by Congress—calling numbers robotically at random. And by doing so, Life Protect knew full well that it was using cellular and wire lines intended to go far beyond its home

state. In this instance, *wherever* it reaches a consumer with a robocall, Life Protect has purposefully availed itself of that state's laws. That it didn't know precisely where its intentional, externally directed contact would land with each dial of the phone is no reason to deprive a federal court of personal jurisdiction where its calls did, in fact, land.

*******************

But minimum contacts sufficient to establish personal jurisdiction exist here. **Where a business is alleged to engage in intentional practices assuredly designed to manifest results across the country in contravention of a federal statute, the act of reaching out in that prohibited manner is purposeful availment of "the privilege of causing a consequence" in whatever state that call reaches.**

Thomas.,2021 U.S. Dist. LEXIS 171881, at *23-24 (emphasis added) (internal citations omitted).

Conversely, the cases where the courts found they did not have personal jurisdiction over defendants in TCPA cases involve calls where it was not apparent they would reach Texas residents. *See* e.g. Cantu v. Platinum Mktg. Grp., LLC, No. 1:14-CV-71, 2015 U.S. Dist. LEXIS 90824, at *8-9 (S.D. Tex. July 13, 2015) ("Cantu cites no evidence showing that Platinum knew that a call to a cell phone number having an area code associated with Texas was as likely to reach a Texas resident a letter sent to a Texas address or a garnishment action direct at a Texas resident would be.").

Here, Mr. Baldridge alleges that SunPath repeatedly called him on his "254" area code cell phone associated with the Waco area in Texas. (Compl., ¶¶ 5, 7.)  Furthermore, SunPath went a step further and utilized a Texas area number itself to call Plaintiff. (Compl., ¶¶ 6, 40.) During its conversations with Plaintiff, Defendant solicited business from Mr. Baldridge, while he was in Texas and encouraged a Texas resident to purchase a warranty. (Compl., ¶ 5, 7, 33.) SunPath availed itself to Texas and the Complaint sufficiently pleads as such.  Given that

SunPath availed itself to Texas by calling a Texas-based consumer on a Texas-area-code phone, and used a Texas area code itself, for the purpose of obtaining business from a Texas resident, it could not be said to offend the notions of fair play and substantial justice to exercise personal jurisdiction over SunPath.

**2.  Given the Facts Pleaded, *Moreland* is Inapposite, Whereas *Cano* is On Point.**

In its Motion to Dismiss, SunPath attempts to evade liability on the basis that it does not directly make the calls at issue. (Defendant's Motion, pp. 9-12).  The FCC however has clearly foreclosed that escape through its Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (internal citations omitted).  Moreover, the May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. at 6587 n. 107. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient

to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. at 6593.

Notwithstanding the foregoing, SunPath cites cases in which courts declined to exercise personal jurisdiction because an agency relationship was found not have been sufficiently pleaded.  Specifically, SunPath cites to the case Moreland v. SunPath, LTD, 6:21-cv-00110-JDK in support of its jurisdictional argument. (Defendant's Motion, pp. 11-12.)  However, in Moreland, the plaintiff did not describe the relationship between SunPath and its telemarketers because the plaintiff did not have any documents to describe same. 6:21-cv-00110-JDK.  That is easily distinguishable to this matter where Plaintiff described in great detail the operative agreement which dictates that SunPath exercises control and direction over its telemarketing agents[4]. The Court should instead look to the case Cano v. Assured Auto Group, SunPath Ltd., where Judge Fish of the Northern District of Texas denied SunPath's Motion to Dismiss and allowed jurisdictional discovery:

> Personal jurisdiction is a 'fact intensive question' that requires the Court to determine whether or not an agency relationship existed. When an inquiry is fact intensive, as with personal jurisdiction, jurisdictional discovery may be warranted.") (internal citations omitted).

Cano v. Assured Auto Grp., Sunpath, Ltd., No. 3:20-CV-3501-G, 2021 U.S. Dist. LEXIS 133338, at *24 (N.D. Tex. July 19, 2021).

During the jurisdictional discovery phase of Cano, the plaintiff's counsel (who is also Jerry Baldridge's counsel) took the deposition of SinPath's corporate representative and

---

[4] . SunPath also cites Born v. Celtic Mktg, LLC, 8:19-cv-01950-JLS-ADS(CA C.D. ),  the Court found that plaintiff "failed to show that Sun[P]ath [] exercise[d] any control over [the phone calls at issue]"  that case should be rejected for the same reasons as Moreland.

obtained the Call Center Marketing Agreement which dictated the relationship between SunPath and its telemarketer. (*See* Ex. A, <u>Cano</u> Second Amended Complaint.)  Plaintiff filed the Call Center Marketing Agreement under seal as an exhibit to the Second Amended Complaint. (*See* Id.; *See* 3:20-CV-3501-G, Doc. No. 34).  After Plaintiff attached the CCMA and described the relationship between SunPath and its telemarketer, rather than re-filing its motion to dismiss (thereby making the same argument that SunPath is making as to Jerry Baldridge's Complaint), SunPath effectively conceded the agency relationship existed with its telemarketer and instead filed an answer. (Ex. B, SunPath's Answer in <u>Cano</u>.)

Because Plaintiff has knowledge of the contracts between the extended warranty company who is the Defendant in this matter and its telemarketers and has pleaded the details of same in the Complaint, personal jurisdiction exists.   For the foregoing reasons, this Court has personal jurisdiction over Defendant and Defendant's Motion to Dismiss under Rule 12(b)(2) should be denied.

### C.  <u>Standard for Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)</u>

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim for which relief can be granted."  When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." <u>Johnson v. Johnson</u>, 385 F.3d 503, 529 (5th Cir. 2004).  To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face." <u>Iqbal</u>, 556 U.S. at 678 (*quoting* <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); <u>DeMoss v. Crain</u>, 636 F.3d 145, 152 (5th Cir. 2011).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  Plausibility requires more than "a sheer possibility that a defendant has acted unlawfully." Id.  A plaintiff need not "prove its case at the pleading stage," CyWee Grp. Ltd. V. Huawei Device Co., No. 2:17-CV-495-WCB, 2018 U.S. Dist. LEXIS 135491, at *14 (E.D. Tex. Aug. 10, 2018).

### D.  The Complaint States a Claim Under § 227(b) of the TCPA.

Count I of the Complaint asserts a claim under § 227(b) of the TCPA.   Section 227(b)(1)(A)(iii) prohibits callers from placing calls using an automatic telephone dialing system or **automatically generated or prerecorded voice** to a cellular telephone excepts where the caller has the prior express consent of the called party to make such calls or where the call is made for emergency purposes.  47 U.S.C. § 227(b)(1)(A)(iii).  Defendant argues that the Complaint specific factual allegations to support a finding that SunPath used an "automatically generated and/or pre-recorded message." (Defendant's Motion at 15.)  Defendant's argument reflects it did not carefully read the Complaint.   Specifically, the Complaint alleged that Plaintiff greeted by an automated/pre-recorded voice prior to being able to speak with a live agent and Plaintiff ultimately connected with one of Defendant's agents. (Compl., ¶ 34.)

Because the Complaint specifically alleges Defendant's use of an automated or pre-recorded voice, Defendant's motion to dismiss Plaintiff's claims under § 227(b) must be denied.

### E.  The Complaint States a Claim Under § 227(c) of the TCPA.

Count II of the Complaint asserts a claim under § 227(c) of the TCPA.  Section 227(c) of the TCPA provided for the establishment of a national do-not-call registry for consumers to

register numbers to avoid receiving solicitation calls from telemarketers.  Section 227(c)(5) of the TCPA establishes a private right of action for a person who received "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 C.F.R. § 64.1200(c) provides: "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."

Defendant argues that Plaintiff failed to allege that his cell phone subscription is equivalent to a residential telephone subscription. (Defendant's Motion at 16.)  However, the Complaint alleges that Plaintiff's cell phone has been used primarily for residential purposes. This claim, when taken as true, is sufficient to establish that this is a residential telephone subscription.

Accordingly, the Complaint asserts a claim under § 227(c).

**F.  The Complaint States a Claim Under § 302.101 of the Texas Business and Commerce Code.**

Count III of the Complaint asserts a claim under §302.101 of the Texas Business & Commerce Code.  That provision prohibits sellers from engaging in telephone solicitation from a location in Texas or to a purchaser located in Texas unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

Here, the Complaint alleges that Defendant declined to registered as a telemarketer/solicitor with the Texas Sexretary of State and nonetheless engaged in telephone solicitation toward Plaintiff. (Compl., 66, Count III.)  Defendant argues that it does not place

- 12 -

any calls to consumers itself, therefore it could not be held liable for calls.  As stated supra, Plaintiff has alleged sufficient facts to support claims against Defendant for the calls placed either by SunPath, or on SunPath's behalf, as, pursuant to their Call Center Marketing Agreements, SunPath directs, controls, or otherwise authorizes to make calls on its behalf.  The Complaint states the basis for that claim and SunPath fails to meaningfully rebut the assertion. Accordingly, Plaintiff states a claim under the Texas Business and Commerce Code.

## IV.    CONCLUSION

Plaintiff, Jerry Baldridge, respectfully requests this Honorable Court deny Defendant's Motion to Dismiss.


Respectfully submitted,

Dated:  January 25, 2022          By: */s/ Jacob U. Ginsburg*
                                      Jacob U. Ginsburg, Esq.
                                      Kimmel & Silverman, P.C.
                                      30 East Butler Ave.
                                      Ambler, PA 19002
                                      Phone: (215) 540-8888 x 104
                                      Facsimile: (877) 788-2864
                                      Email: jginsburg@creditlaw.com
                                      teamkimmel@creditlaw.com


## CERTIFICATE OF SERVICE

I, Jacob U. Ginsburg, Esq. hereby certify that I served a true and correct copy of the foregoing on all parties of record via ECF on this date, January 25, 2021.


*/s/ Jacob U. Ginsburg*