IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| JERRY BALDRIDGE, § § § | |
| Plaintiff, § | Civil Action No.: 4:21-cv-3629 |
| § § | |
| v. § | |
| § | |
| SUNPATH, LTD., § § § | |
| Defendant. § | |

## PLAINTIFF'S SUR-REPLY

AND NOW, Plaintiff Jerry Baldridge ("Plaintiff" or Mr. Baldridge"), by and through his counsel, filing the instant Sur-Reply to the Reply Brief of Defendant SunPath LTD ("Defendant" or "SunPath") in Support of its Motion to Dismiss. Doc. No. 16

**1. SunPath's Reply Brief Misrepresents What is in Controversy**

Plaintiff's Complaint describes the degree of control SunPath generally exercises over its telemarketer-vendors through its "Call Center Marketing Agreements" and provides a detailed description of the phone calls he received from third-party vendor(s) acting at SunPath's direction and how Plaintiff knew the calls were for SunPath (i.e. directing Plaintiff to a SunPath website.) Doc. No. 1, ¶¶ 15-24, 38-44.

SunPath's motion to dismiss was accompanied by an affidavit by SunPath President Andrew Garcia that critically, did not dispute that Plaintiff received calls from a third-party at the dates and times alleged, or that the telemarketer was attempting to sell

- 1 -

SunPath warranties. ." Id., ¶¶ 6-9. Rather, Garcia averred in relevant part that SunPath does not direct, oversee or manage third-parties, and that it "has no role or involvement in telemarketing companies' selection of who to market to, or the manner in which they conduct their marketing operations." Id., ¶¶ 6-9.

Plaintiff then filed his response to Defendant's motion which included as a sealed exhibit, a copy of SunPath's "Call Center Marketing Agreement" and cited to Cano v. SunPath, a recent case where that Agreement was described in an amended complaint after jurisdictional discovery - where SunPath dropped its challenge to personal jurisdiction in Texas. Doc. Nos. 11, 12. The Call Center Marketing Agreement describes *inter alia* the compensation by SunPath to its telemarketers (Doc. No. 12, p, 2, ¶¶ 13-15); and provides strict "standards of conduct" by which its telemarketers are required to comply (*Id.,* Standards of Conduct.) Contrary to Garcia's sworn affidavit and consistent with the allegations in the Complaint about the degree of control SunPath exercises over its telemarketing agents, the Call Center Marketing Agreement provides in relevant part:

> Every sale of every service contract must be recorded start to finish and made available on demand to the administrator, payment processing company and Association. The equipment used for the recording must be PCI complaint so that the consumer's credit card number or ACH information are not recorded. This fact that the call is being recorded must be disclosed to the customer at the beginning of the call, and customer representatives must not have the ability to pause the record other than to avoid recording credit card information.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

> Live third party call monitoring must be made available to payment processing companies, administrators and the Association, and such monitoring to assure quality must be disclosed to callers.

Doc. No. 12, p. 5

Despite the fact that Plaintiff's allegations in the Complaint about *his* conversations with the telemarketers for SunPath remain uncontroverted, the reply brief still calls Garcia's false averments as "uncontroverted." SunPath also repeatedly insists that an affidavit from the Plaintiff would be necessary to rebut the conclusory and false averments from Garcia. *Id*., pp. 3-4.

Even though Plaintiff's description of the violative phone calls in the Complaint were **not challenged** by Garcia's affidavit or SunPath's motion generally, Plaintiff has provided a sworn declaration verifying the screenshots he took and describing the calls. (*See* Baldridge Declaration and its Exhibit A, screenshots of calls from SunPath's telemarketing agent.)

**2. SunPath's Reply Brief Misrepresents the Procedural Posture of the Case.**

While SunPath is aware Jerry Baldridge's Complaint has not been amended, perhaps hoping to dismiss the Complaint without leave to amend,[1] SunPath falsely refers to Baldridge's Complaint as an "Amended Complaint"- not once, but twice in its Reply Brief. Doc. No. 16, p. 3. In the event the Court finds the Complaint to be insufficiently

---

[1] . *See* Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002) ("district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case.")

- 3 -

pled, it would be unjust and contrary to Rule 15 and its application to deny Plaintiff the opportunity to amend. It is therefore incumbent upon Plaintiff to refute SunPath's description of the operative pleading as the "Amended Complaint" when no such amendment has occurred.

**3. SunPath's Reply Brief Demonstrates Why Discovery is Necessary**

To accompany Baldridge's opposition brief, he filed under seal the "Call Center Marketing Agreement" described in Baldridge's Complaint. Doc. No. 12. Garcia did not challenge that this Agreement was in effect while the subject calls were made to Baldridge in his affidavit, but SunPath contends in its reply brief that the Agreement "has nothing to do with this case whatsoever." Doc. No. 16, p. 5. While there is no reason to infer SunPath used a different agreement with the telemarketer that called Jerry Baldridge from that in effect during the calls to Jason Cano (from whose case the Agreement was adduced), that is a factual inquiry appropriate for the fact-finding process. It is not a reason to dismiss the case before the fact-finding process occurs. Through its reply, SunPath makes the case why its motion to dismiss should be denied.

Respectfully submitted,

Dated: February 8, 2022

By: */s/ Jacob U. Ginsburg*
 Jacob U. Ginsburg, Esq.
 Kimmel & Silverman, P.C.
 30 East Butler Ave.
 Ambler, PA 19002
 Phone: (215) 540-8888 x 104
 Facsimile: (877) 788-2864
 Email: jginsburg@creditlaw.com
 teamkimmel@creditlaw.com

- 4 -

## CERTIFICATE OF SERVICE

I, Jacob U. Ginsburg, Esq. hereby certify that I served a true and correct copy of the foregoing on all parties of record via ECF on this date, February 8, 2022.

*/s/ Jacob U. Ginsburg*